[Dkt. No. 105]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>KEVIN MAYFIELD,<br><br>        Defendant. | Crim. No. 07-801 (RMB)<br><br>OPINION |

**APPEARANCES:**

FEDERAL PUBLIC DEFENDER'S OFFICE
By: Lori M. Koch, Esq.
800-840 Cooper Street, Suite 350
Camden, New Jersey 08102
    On behalf of Defendant Kevin Mayfield

OFFICE OF THE UNITED STATES ATTORNEY
By: Jason M. Richardson, Assistant United States Attorney
401 Market Street, 4th Floor
Camden, New Jersey 08101
    On behalf of the United States of America

**RENÉE MARIE BUMB**, United States District Judge:

    This matter comes before the Court upon Defendant Kevin Mayfield's Emergency Motion for Compassionate Release, pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), or, in the alternative, to be released to home detention [Dkt. No. 105]. Defendant is an inmate at Federal Correctional Institution ("FCI") Coleman Low in Sumter County, Florida, where he is

serving a sentence of 200 months' imprisonment. In the instant motion, Defendant seeks immediate release to home confinement on the basis of an alleged chronic lung disease, which he contends puts him at a heightened risk for complications if he contracts COVID-19. The Government opposes Defendant's motion, arguing that Defendant has not demonstrated extraordinary circumstances warranting his release and that FCI Coleman-Low, where he is currently housed, has taken significant steps to limit the spread of COVID-19. For the reasons stated below, Defendant's motion will be **DENIED**.

I.   FACTUAL & PROCEDURAL BACKGROUND

In 2007, Defendant along with Casson Coward, recruited two underage girls in Allentown, Pennsylvania and convinced them to travel to Atlantic City, New Jersey to work as prostitutes. Defendant transported one of the underage girls to an Atlantic City motel, photographed the underage girl naked, and posted those photographs online in Craigslist posts advertising the minor girl's services as a prostitute. After placing these advertisements online, the underage minor received telephone calls soliciting her services as a prostitute.

On September 29, 2008, following a four-day trial, a jury convicted Defendant of transporting and conspiring to transport minors in interstate commerce for purposes of prostitution, in

violation of 18 U.S.C. § 2423(a) and (e), and pandering or advertising of child pornography, in violation of 18 U.S.C. § 2252(a)(3)(B).  On January 8, 2009, the Court sentenced Defendant to three concurrent terms of 200 months' imprisonment, required Defendant to serve a life-term of supervised release, and imposed a $500 fine.

Defendant first submitted a request for compassionate release to Kathy P. Lane, Warden at FCI Coleman Low, on April 1, 2020.  By letter dated April 10, 2020, the Warden denied Defendant's request for compassionate release.  On May 7, 2020, Defendant filed the instant motion with this Court, seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Defendant alleges that he suffers from a chronic lung condition which makes him particularly vulnerable to becoming seriously ill from COVID-19 and that he is more likely to contract COVID-19 while incarcerated.

## II.  LEGAL STANDARD

"The recently enacted First Step Act allows a defendant to be afforded compassionate release for 'extraordinary and compelling reasons.'" United States v. Sellers, Crim. No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020)(quoting 18 U.S.C. § 3582(C)(1)(A)(i)).  Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask

3

the Bureau of Prisons ("BOP") to do so on their behalf, give BOP thirty days to respond, and exhaust any available administrative appeals." United States v. Raia, Civ. No. 20-1033, 2020 WL 1647922, at *1 (3d Cir. Apr. 2, 2020)(citing § 3582(c)(1)(A)). "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." Sellers, 2020 WL 1972862 at *1 (citing 18 U.S.C. § 3582(C)(1)(A)).

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." United States v. Pabon, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020).

### III. DISCUSSION

In the midst of the COVID-19 pandemic, the Court considers Defendant's motion with the utmost gravity. However, as articulated by the U.S. Court of Appeals for the Third Circuit, "the mere existence of COVID-19 in society and the possibility

that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Defendant alleges, and the Government does not dispute, that Defendant has satisfied the exhaustion requirement by submitting his, since denied, request for compassionate release to the Warden at FCI Coleman Low.  Therefore, the Court focuses on the second step of the analysis; whether extraordinary and compelling reasons exist to justify compassionate release.

Defendant contends that "extraordinary and compelling reasons" exist to justify compassionate release based on Defendant's diagnosis of lung sarcoidosis, which allegedly makes him "particularly vulnerable to COVID-19."  Defendant asserts that an early release is necessary to save him from a "de facto death sentence" from COVID-19, because "[t]he virus thrives in densely packed populations, it has already entered FCI-Coleman, and FCI-Coleman is ill-equipped to contain the pandemic." See Def's Motion, at 6.

First, Defendant, who is 40 years old, argues that his lung sarcoidosis constitutes a "chronic lung diseases," which puts him in a "high risk" group under guidance disseminated by the Centers for Disease Control and Prevention (the "CDC").  In

5

response to the COVID-19 pandemic, the CDC published guidance on its website, which advises Americans that "older adults [65 years and older] and people of any age who have serious underlying medical conditions might be at higher risk for severe illness from COVID-19."[1]  The CDC states that "chronic lung disease or moderate to severe asthma," particularly if not well controlled, are underlying medical conditions that put individuals at a heightened risk for severe illness if they contract COVID-19.  The CDC lists "chronic obstructive pulmonary disease (COPD)(including emphysema and chronic bronchitis), idiopathic pulmonary fibrosis and cystic fibrosis" as examples of "chronic lung diseases" that place individuals at a heightened risk for complications.

    The Government acknowledges that "Defendant has a documented history of lung issues going back to 2018," but disputes Defendant's assertion that his lung sarcoidosis constitutes a "chronic lung disease."  In September 2018, a surgical pathology report at Leesburg Regional Medical Center confirmed a diagnosis of "lymphadenopathy, sarcoidosis." A year

---

[1] Centers for Disease Control and Prevention, <u>People Who Are at Higher Risk for Severe Illness</u>, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (accessed on May 26, 2020).

later, in a September 2019 evaluation by Dr. Jose L. Diaz at the Pulmonary Group of Central Florida, Defendant's condition was described as a "moderate obstructive ventilatory impairment due to sarcoidosis" due to a "minimal obstructive lung defect." Dr. Diaz observed that Defendant's condition was stable and had improved since the previous evaluation.

Even though the Court is sympathetic to Defendant's concerns about becoming seriously ill if he were to contract COVID-19, there is nothing in his medical history that suggests that his sarcoidosis creates an "extraordinary and compelling" risk. Defendant misleadingly suggests that his lung sarcoidosis is a "chronic lung disease that has serious and lethal implications, especially when combined with the risk of COVID-19." Def.'s Reply Brief [Dkt. No. 108], at 5. This statement was based on Defendant's discussion of "pulmonary fibrosis," a much more advanced stage of sarcoidosis, which Defendant has not been diagnosed with. Defendant has only ever been diagnosed with lymphadenopathy sarcoidosis. Furthermore, it does not appear that Defendant takes any medication for his condition or that it negatively impacts his day-to-day life.

Next, Defendant argues that prison conditions at FCI Coleman Low put Defendant at a heightened risk of contracting COVID-19. Defendant states that he shares a cell with two other

7

inmates, even though the cell is only meant for two people, and that the "open dormitory" style layout of the facility means that air is shared among the inmates. Defendant also complains that staff and inmates are not required to wear face masks and that there is insufficient soap available.

Although Defendant paints a bleak picture of the conditions at FCI Coleman Low, the statistics and facts on the ground suggest that the situation is under control. As of May 26, 2020, the BOP reports that only one inmate and two staff members at FCI Coleman Low have tested positive for COVID-19. As of the same date, the state of Florida has reported 51,746 positive cases, but only 253 positive cases are in Sumter County, where FCI Coleman Low is located.[2] Additionally, the BOP has implemented numerous safety procedures to mitigate the spread of COVID-19. Specifically, the BOP's enhanced safety procedures include: suspending visits and unnecessary inmate movement; screening inmates, staff, and contractors; isolating inmates under certain circumstances; and modifying operations to maximize social distancing during meal and recreation times.[3]

---

[2] Johns Hopkins University, Coronavirus Resource Center, available at https://coronavirus.jhu.edu/ (accessed on May 26, 2020).

[3] Federal Bureau of Prisons, BOP Implementing Modified Operations, available at

Other district courts that have recently considered the conditions at FCI Coleman Low have also concluded that there is no evidence that inmates at the facility are at an increased risk of contracting COVID-19. See United States v. Bolze, 2020 WL 2521273, at *8 (E.D. Tenn. May 13, 2020)("The number of cases at [FCI Coleman Low] is low and appears to be declining"); United States v. Canada, 2020 WL 2449344, at *1 (S.D. Ga. May 12, 2020)("The Court is obliged to note that FCI Coleman Low only has one active case of COVID-19 in its inmate population); United States v. Burkes, 2020 WL 2308315, at *2 (S.D. Fla. May 8, 2020)("FCI Coleman – Low has had only two confirmed COVID-19 cases and that the BOP has implemented mitigation measures in accordance with its role to protect the inmates within its facilities").

Under the circumstances, it appears that granting Defendant's request to be released to his mother's house in Atlantic County, New Jersey would actually place him at an even greater risk of contracting COVID-19.  With 155,092 documented coronavirus cases in New Jersey, 2,028 of which are in Atlantic County, as of May 26, 2020, there are significantly more cases in Atlantic County, New Jersey than in Sumter County, Florida,

---

https://www.bop.gov/coronavirus/covid19_status.jsp (accessed on May 26, 2020)

where FCI Coleman Low is located.[4]  Furthermore, such a move would risk exposing Defendant to COVID-19 in transit from Florida to New Jersey.

Given these considerations, the Court finds that Defendant has failed to demonstrate "extraordinary and compelling reasons" to justify a compassionate release.  As such, the Court need not evaluate whether a modification of Defendant's sentence would be appropriate under the § 3553(a) factors.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Emergency Motion for Compassionate Release, pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), or, in the alternative, to be released to home detention [Dkt. No. 105], will be **DENIED**.  An Order consistent with this Opinion shall issue on this date.

DATED: May 27, 2020

> s/Renée Marie Bumb
> RENÉE MARIE BUMB
> UNITED STATES DISTRICT JUDGE

---

[4] See supra n.2.